# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. CR616-009 |
| | ) | |
| MICHAEL CONAWAY | ) | |

## REPORT AND RECOMMENDATION

Michael Conaway has been indicted for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Doc. 1. He moves to suppress the handgun found in the vehicle he was driving (docs. 16, 17), contending that police violated his Fourth Amendment rights by searching the car after arresting him.[1] Docs. 17 at 3-4.

## I. BACKGROUND

On April 2, 2016, Georgia State Patrol (GSP) Officer Eric Wilkes "was on routine patrol [traveling east] on State Route 144 in Tatnall County," a rural road approximately seven miles from the nearest town

---

[1] In his motion, Conaway also argues that police lacked reasonable suspicion to conduct the traffic stop that led to his arrest and the discovery of a gun. Doc. 17 at 3. He abandoned that argument at his evidentiary hearing.

(and thirty miles from Baxley, Georgia where Conaway was headed at the time of the incident). Doc. 16-1 at 1.[2] He observed a vehicle traveling the opposite direction at a high rate of speed (Wilkes guessed 75-80 mph) and activated his radar. Its 79 mph reading confirmed his suspicion that the vehicle was greatly exceeding the 55 mph speed limit.

Wilkes "blue lighted" the car and attempted to pull it over. Doc. 16-1 at 1. Instead of stopping, the car accelerated. *Id.* One mile later, it finally pulled over. Wilkes then

> exited [his] patrol car and cautiously approached the rear of the car. Because the driver did not initially stop, [he] feared something could be wrong. [Wilkes] looked through the back glass of the vehicle to observe the driver [and] could see [he] had his left arm on the open window frame and his right hand between the driver seat and center console. His posture indicated he was possibly reaching for a weapon. [Wilkes] drew [his] . . . sidearm and ordered the driver to put his hands up. He did not initially comply[,] which further heightened [Wilkes'] fear. [Wilkes] told the driver to put his hands out of the window and he complied.
>
> [Wilkes] began to walk towards the driver's window and he lowered his right hand towards the seat again. At th[at] time, [he] loudly ordered the man to show both his hands again and he did. [Wilkes] told him that if he reached towards the seat again, [he] would shoot

---

[2] The facts in this section come from the evidentiary hearing held on the present motion, as well as a police incident report (doc. 16-1 at 1-2) whose version of events Conaway does not contest.

him. [Wilkes] strongly believed, based on the driver's actions, that he had a weapon between the seat and console.

* * *

Because [Wilkes] was alone and unsure if assistance was coming, he wanted to secure the driver immediately. [He] grabbed [Conaway's] hands and handcuffed him. [Wilkes] helped him exit the vehicle so he could no longer reach for any weapons hidden in the car. [Wilkes] then moved the handcuffs behind his back and placed him in the rear of [the] patrol car.

Doc. 16-1 at 1-2.

With Conaway in the back seat, Wilkes ran his name and birthdate, which revealed that he had a suspended driver's license and was not the registered owner of the car he drove. Doc. 16-1 at 2. Conaway then told Wilkes that he "was speeding because his wife was at the . . . [h]ospital." *Id.* Wilkes called the hospital, only to discover Conaway's story was a lie. *Id.*

By that point, Wilkes could no longer allow Conaway to drive the vehicle (he had no valid license) *and* had decided to place him under arrest.[3] In the proverbial "middle of nowhere," with no capable driver

---

[3] Law enforcement officers have discretion to arrest people for speeding violations in Georgia, much less for driving on a suspended license. *See* O.C.G.A. § 17-4-23(a) ("A law enforcement officer may arrest a person accused of violating any law or ordinance governing the operation, licensing, registration, maintenance, or

3

(*e.g.*, a licensed passenger) or the owner anywhere to be found, a tow "service was called to remove the vehicle from the scene." Doc. 16-1 at 2. In accordance with GSP policy intended to protect officers and tow companies from theft allegations (as well as protect arrestees from theft), Wilkes conducted an inventory of the vehicle's contents. *Id.* ("I walked back [to] the vehicle and began my inventory."). During that "search," he located a handgun "[b]etween the driver's seat and the center console, where Conaway was reaching" just a few moments before. *Id.* Wilkes then ran a criminal history, which revealed Conaway's previous felony convictions.

## II. ANALYSIS

As noted above in n. 1, Conaway asserts no Fourth Amendment violation from Wilkes' decision to stop his vehicle. He asserts no violation from his arrest-based seizure (nor could he, since speeding and driving on a suspended license both provide probable cause for arrest. *See Wilson* 853 F.2d at 872-73.). Instead, he only challenges Wilkes'

---

inspection of motor vehicles by the issuance of a citation, provided the offense is committed in his presence or information constituting a basis for arrest concerning the operation of a motor vehicle was received by the arresting officer from a law enforcement officer observing the offense being committed. . . ."); *United States v. Wilson*, 853 F.2d 869, 872–73 (11th Cir.1988) (construing § 17-4-23(a) as giving law enforcement officers discretion to issue citations *or* make arrests for traffic offenses).

post-arrest vehicle search and seeks to suppress the handgun it uncovered. Doc. 17 at 4.

"'The Fourth Amendment protects individuals from unreasonable search and seizure.'" *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003) (quoting *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001)). And searches conducted without a judicial warrant "are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The government bears the burden of establishing the exception, and that the search was in fact reasonable. *United States v. Bachner*, 706 F.2d 1121, 1126 (11th Cir. 1983).

One such recognized exception is for inventory searches conducted after a defendant's arrest and impoundment of his car. When police arrest a vehicle's operator "away from home, the police may impound the personal effects that are with him at the time to ensure the safety of those effects." 3 WAYNE R. LAFAVE, SEARCH & SEIZURE § 7.3(c) (5th ed.) (updated Dec. 2015) (citing *United States v. Ducker*, 491 F.2d 1190 (5th

Cir. 1974)[4] (arrest of defendant at shopping center, impoundment of his car parked in center lot proper), *and Humphreys v. State*, 287 Ga. 63 (2010) (rented car defendant was driving when arrested, now "illegally and dangerously parked," properly impounded)). An operator's extended inability to recover a vehicle (like that caused by an arrest) enhances the need for impoundment. *See United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980); *Franco v. Kluge*, 2015 WL 1637688 at * 10 (W.D. Tex. Apr. 13, 2015).

When police properly impound a vehicle post-arrest,[5] they may, without a warrant, conduct an inventory search of the vehicle "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987).

> To satisfy the so-called inventory search exception to the warrant requirement, the government bears the burden to demonstrate that

---

[4] "In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), [the Eleventh Circuit] adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981." *Scott v. United States*, ___ F.3d ___, 2016 WL 3262212 at * 2 (11th Cir. June 14, 2016).

[5] "[T]he validity of an inventory search of a car depends on the legality of the decision to impound the car." *United States v. Handy*, 592 F. App'x 893, 907 (11th Cir. 2015).

> the officers possessed the authority to impound the vehicle and followed departmental policy in conducting the search. *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991). '[A] law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of something other than suspicion of evidence of criminal activity.' *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992) (internal quotation marks omitted). If the vehicle has been impounded lawfully, an officer may conduct an inventory search, including a search of closed containers, 'provided the search is conducted pursuant to standardized criteria.' *Id.* Although inventory searches cannot serve as pretext,[6] 'the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search.' *United States v. Bosby*, 675 F.2d 1174, 1179 (11th Cir. 1982).

*United States v. Witten*, 2016 WL 2803047 at * 6 (11th Cir. May 13, 2016) (footnote added).

In this case, Wilkes had the authority to impound Conaway's car after placing him under arrest. Conaway was the driver and sole occupant of the vehicle, which was not registered to him; nor was the registered owner nearby. Because his arrest occurred on the side of a road seven miles from the nearest town, no one was available to remove

---

[6] "'[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.' *Bertine*, 479 U.S. at 376, 107 S. Ct. at 743 (Blackmun, J., concurring)." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

the vehicle. Wilkes thus reasonably assumed that the car might sit unattended for a while. *See Staller*, 616 F.2d at 1290. Since nothing required him to allow Conaway to make alternate arrangements for the car's removal, *see Bertine*, 479 U.S. at 374,[7] he properly impounded the car. *See United States v. Vladeff*, 630 F. App'x 998, 999 (11th Cir. 2015) (impoundment of truck defendant drove proper, where defendant's license had been suspended, he did not own the truck, and the registered owner could not be located).

Once he impounded the vehicle, Wilkes had every right to "conduct an inventory search, including a search of closed containers," so long as he did so "pursuant to standardized criteria." *Sammons*, 967 F.2d at 1543. He testified that the Georgia Department of Public Safety (GDPS) has a policy on "arrested cars" that requires impoundment and an inventory "[w]henever a [state patrol officer] arrests the driver/owner of

---

[7] "[T]he existence of alternative means of dealing with the automobile, even less intrusive means, does not illegitimate [a] constables' decision to impound it. When a motor vehicle is left without a licensed driver in the course of a lawful highway stop, the Constitution only requires the police to act reasonably with regard to disposition of the vehicle. There is no requirement that the officers must select the least intrusive way of fulfilling their community caretaking responsibilities." *Sammons*, 967 F.2d at 1543. Hence, Wilkes' admission that he sometimes allows arrestees to make alternative arrangements does not undermine the objective reasonableness of his decision to impound and inventory Conaway's vehicle here.

a vehicle and the arrest involuntarily separates the driver/owner from their vehicle." Doc. 20 at 11 (government response brief citing GDPS Policy Manual No. 17.06.4(G)(4)). Two exceptions to the policy -- when a licensed passenger is available and when no arrest results from a traffic citation -- did not apply.

Following that policy, which required that Wilkes take stock of any personal property in the impounded vehicle, he then inventoried the car. He looked for any valuables (though he could not recall if he searched the trunk), and in doing so examined the area where he saw Conaway furtively reaching before being handcuffed. It was there that Wilkes found the handgun that led to the present indictment. Because no evidence suggests that Wilkes strayed from the GDPS impoundment and inventory policy, his search complied with the Fourth Amendment. *See Bertine*, 479 U.S. at 373; *South Dakota v. Opperman*, 428 U.S. 364, 375 (1976); *Sammons*, 967 F.2d at 1543. Any evidence uncovered as a result of that search thus cannot be suppressed.

At the evidentiary hearing, Conaway implied that Wilkes' search sought incriminating evidence rather than an inventory of the car's contents. Whatever an officer's subjective intent, however, "if an

inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found." *Staller*, 616 F.2d at 1290. Wilkes' inventory, done after a lawful impoundment and in accordance with an established GDPS policy, qualified as reasonable, so any subjective expectation he had of finding a weapon or other contraband simply does not matter.

Conaway also invokes a different exception to the warrant requirement -- one he says Wilkes failed to satisfy -- by characterizing the search as one incident to his arrest. *See* doc. 17 at 4-5. Such a search "may only include the arrestee's person and the area within his immediate control." *Arizona v. Gant*, 556 U.S. 332, 339 (2009). "That limitation . . . ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id.* Where an arrestee sits handcuffed in the back of a patrol car (as was Conaway at the time of Wilkes' search), and the offense charged (say, driving on a suspended license) leads to no suspicion that evidence exists in the defendant's car, a warrantless

vehicle search cannot escape scrutiny via the incident-to-arrest exception.

As discussed above, however, Wilkes' search stemmed from the vehicle's impoundment and inventory, not Conaway's arrest.[8] And where the inventory exception applies, as it does here, *Gant* does not. *See United States v. Akinlade*, 519 F. App'x 529, 535 (11th Cir. 2013) ("We need not address Mr. Akinlade's *Gant* argument because the impoundment and inventory of the vehicle were permissible on other grounds.").

## III. CONCLUSION

Accordingly, Michael Conaway's motions to suppress (docs. 16 & 17) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  29th   day of August, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[8] Wilkes' admissions that he could conceive of no evidence in the car relevant to the offenses of arrest (speeding and a suspended license), and that he felt safe with Conaway cuffed in the back of his cruiser thus bear on an irrelevant exception. Also worth noting, his incident report characterized the search as an inventory, not one conducted post-arrest. *See* doc. 16-1 at 2.